We'll now move on to the next case on the calendar, that's IT Portfolio Inc. v. Facsimile Communications Industries. Let me make sure the counsel is here, Mr. Podol. Good morning. Am I pronouncing that right? You did. Podol? Yes, Podol is the way we say it, but certainly close to it. Your name, you get deferred to. And Mr. Counselor? Good morning, Your Honor. All right. So, Mr. Podol, you've reserved three minutes of rebuttal, so that gives you seven minutes up front. You may proceed. Thank you, Your Honor. To appreciate the claims of Appellant IT Portfolio, or ITP, we might consider the structure of the software agreement first. The software agreement provided the title to the Print4 software would transfer immediately to NER. Payment, however, for the software was deferred until after the development services were terminated. In the event of a sale of the software, the buyer would, at the option of ITP, pay 42 months of payments to ITP. And in the agreement, a sale is defined as a sale or assignment of rights in the software agreement and the Print4 software. No other disclosure or transfer of the software is permitted by the agreement. Appellee, who I'll call FCI for the moment, denies that this arrangement had legal effect and would have you believe that ITP sued a non-signatory merely because its contracting party defaulted. To the contrary, and I think it's important for perspective, ITP is faithfully following the structure of the software agreement, which assigns the obligation of paying for title to a transferring of the software. Are you suggesting that you can get 42 months worth of payments from NER and from FCI? No. We believe that that would be duplicative. The obligation to pay for the transfer of title would be the obligation of NER if there were no transfer. If there were a transfer, the first premise is that the transferee takes an assignment of the software agreement and thus becomes essentially NER. So any payments that NER has made then gets credited to the transferee. If there were no payments, yes, the transferee then, according to the structure of the agreement, becomes responsible for the 42 payments. They're not identical payments in terms of structure, but they are similar. Hold on. If there was a termination of the agreement, then obviously there would be no obligation for FCI who obtained the software after termination. This all hinges on the issue of whether or not the agreement was terminated. That's really what this case boils down to, right? The order of the district court did find that there was a termination of the agreement and an abrogation of all rights of ITP in the agreement. But you would agree, if there was a termination of the agreement, then FCI would have no obligation under your theory, right? It's a little bit confusing because termination doesn't always mean an abrogation of all rights in the agreement. If the agreement is terminated fully and finally with an abrogation of all rights, the rights of ITP, then a transferee has no obligations. Section 11.2 says, on the effect of the termination due to a default or voluntary discontinuation by ITP, all obligations to perform development services shall expire. And then that kicks in the 42-month payment from any owner, right? Yes, that's what it says. I want to be sure I understand the fact that may be pertinent to this. Am I correct in that your client triggered the acceleration provision? That's in the Colorado pleadings, and I just want to make sure that that's a correct understanding here in this case. The factual record would show, if it were complete, that ITP terminated development services on December 1st of 2014, initiated the continuing payments in the same letter. Now, according to the contract, the... And my question is whether you saw an acceleration. No. Factually, we did not. We did. Where is that? How is that in the Colorado pleadings? The Colorado pleadings make an allegation that all of the continuing payments are due and payable. But there was factually no acceleration of the payments. Which means acceleration, right? Help me out. Which means acceleration, correct? It would mean acceleration, well, except for the third amended complaint in Colorado, which is the applicable pleading. Acceleration would not be necessary because all payments have matured by the time of the filing of the third amended complaint. Look, I'm asking this because acceleration is only available on termination. My understanding was completed in Colorado. Well, you can dispute that, but that's at least an argument that's made, that acceleration is only permissible on termination. If, to the extent that is an argument here, I am concerned about your client taking inconsistent positions before two different courts. So, which is it? As I said, there was no termination of the agreement. The acceleration... That's not the question I asked you. There was no acceleration in the factual record. There was an allegation of acceleration in the now supplanted Colorado pleadings. By your client? Yes. The allegation is by your client, correct? Yes, correct. Okay. Okay. Um, the court's order... I have 22 seconds. The court's order found that termination as used in the second paragraph of 11.2 meant termination of the agreement because the court contrasted termination with voluntary discontinuation. The agreement does not. The agreement uses termination as the result of either voluntary discontinuation... I want to go back to Judge Rauji's question. You said that acceleration doesn't necessarily mean termination. In 11.2 of the agreement, it says ITP shall have no right of acceleration if the agreement is terminated due to ITP's default or ITP's voluntary discontinuance of discontinuation. So, you're arguing that this wasn't a termination. It was a voluntary discontinuation. The agreement says you can't accelerate if it's a voluntary discontinuation. So, the answer to Judge Rauji's question is by virtue of the agreement, in the Colorado action, you definitely pled that there was acceleration. On page 840 of the record, paragraph 45, NER is liable to ITP for the accelerated continuing payments as calculated according to the software agreement. So, you invoke the accelerated payment, then after that lawsuit is filed, they get the software, and then in your third amendment pleading after the district court in Colorado dismissed FCI, you then change the pleading, even though it already had been dismissed, to take out the words acceleration. Isn't that what happened? Or am I missing something? I think you're missing really the factual record. I looked at every single pleading, and your pleadings in Colorado all had that it was a termination with acceleration until this party got dismissed from Colorado, and then without the ability to even file a pleading against them because they were even dismissed, you did file another pleading taking out the words acceleration. You're saying I'm misunderstanding what happened in Colorado? Well, is that supposed to be an estoppel? No, it's an admission. You say the supplanted pleading. Our case law is clear. If you amend a pleading, it becomes the operative pleading, but the prior allegations become admissions of your client. Not in a different action, and that's addressed in the papers, your honor. You can have an estoppel from pleadings in a different action. You can't have an admission. At least that's the present law as we understand it. Let me read to you. This is our U.S.V. McKeon. This is what we say. The law is quite clear, and this is a civil action, that such pleadings that have been superseded in a civil litigation constitute the admissions of a party opponent and are admissible in the case in which they were originally filed, and I emphasize this, as well as in any subsequent litigation involving that party. That is what we said in U.S.V. McKeon in 1984. So I don't think you're correct that if you take completely contradictory positions on the facts, just because it's in a separate proceeding, but it's the same party, that somehow you get a free pass on that. I think you're just wrong on that. All right. Well, my time is well up, and I will address your concern in rebuttal. May I ask one more question, Judge Sullivan, here? Yes. Assume for purposes of just answering my question that we were to find a termination here. How do you have a claim against anyone other than your original contracting party? I mean, I understand that the contract remains in effect between IT and NER for post-breach payments as accelerated. But what I don't understand is if there was a termination, how you have any claim against facsimile communications. Make sure I understand what your claim is if we find termination supported. Okay. Well, are we inferring termination from a pleading? Regardless, assume we agree with the district court that there was termination. How do you have any claim against facsimile then? I just want to be sure I understand it if we were to reach that conclusion. If you reach the conclusion that the agreement had been terminated, there is no termination in the record. But if you reach that conclusion that the agreement had been terminated and all rights of ITP are abrogated, then of course there's no way for ITP to enforce the agreement against anyone. Okay. Thank you. Thank you, Judge Sullivan. No, it's fine. We'll now hear from Mr. Kantrowicz for attendance. Good morning.  I have the privilege of representing the appellee. I don't expect to take my full 10 minutes here unless the court has substantial questions. Clearly, this plaintiff's claims are all based upon a contract it had with NER, a contract that it terminated as the court has repeatedly questioned Mr. Podol on. All of the pleadings, all of the claims that existed at the time that my client purchased an asset from NER indicated that there was acceleration of the debt. NER was disputing that. NER was involved in litigation with them. But the contract itself provides that they can only accelerate, which they did accelerate, which is what the district court below found twice in its first decision and then its reconsideration argument. If we're not to find that acceleration based on the Colorado pleadings, is there anything in the record in this action that would allow us to reach that conclusion? Sure. First of all, Mr. Podol confuses and perhaps conflates paragraph 10.2, which deals with NER's rights to sell the software and the agreement. Nothing in there says NER shall be obligated to sell or assign its rights under the agreement with the software. 10.2, which is at the record 822, reads NER shall have the right, the right, not the obligation, the right to sell or assign its rights under this agreement and the print for software without the prior consent of ITP provided it gives notice. So NER is obligated under this agreement. If NER decides to sell the software and fight with ITP over the agreement, whether they breached, who breached, whatever it was, because there was a dispute between NER and ITP. It's been going on for five years. There's no obligation here for facsimile to take an assignment, to accept an assignment, especially in a situation where here ITP previously terminated all its services. And this is all work for hire. Mr. Porto argues this is part of purchase price or something. That's just simply not the case. The contract says all the services being rendered from this day forward are work for hire. And there's no intellectual property rights here that ITP retained. It's all work for hire. So why would a purchaser take an assignment of a services contract that's already been terminated, discontinued? I'll use the word discontinued because that's what Mr. Porto says. If there's a discontinuation of services, why would a purchaser assume that a services agreement, you're not going to get anything other than an obligation to pay. You're suggesting that even if this was not a termination, even if this was a voluntary discontinued services under Colorado law, there would be no contract action against your client because they did not manifest any assent to the obligation in the agreement. Is that correct? Not only didn't they manifest, they manifested the exact opposite, that they refused to assume the agreement. There's no assumption of the agreement. This is a motion to dismiss. I don't know what that would be based on. It's in the contract where they purchased the asset from NER. There's a record, right? No, no, it's in the record. How can we consider your client's contract with NER and deciding whether or not there was a manifestation to an attempt to be obligated by the contract? That would be outside the pleadings, right? I understand your distinction, but the complaint refers to the asset purchased by facsimile from NER. It refers to that and it says that there's an implied contract or some unjust enrichment to your point of, well, you know, if there's only voluntary discontinuance and not termination, are they liable under this? And the answer that I offer to you is no, they're not responsible because they did not take an assignment. There was no assignment given from NER to facsimile. May I ask you about the unjust enrichment theory? And Mr. Podol will correct me if I've misunderstood his theory, but as I understood it, the suggestion here is that the defendant basically acquired this information without paying fair market value for it. But this whole thing was a scheme by NER and facsimile to get it transferred to a party that, though it had assets, this way wouldn't be obligated and that to that extent you are unjustly enriched. Why does that not, why can they not pursue that claim? That's a very good question. In the Colorado action, Your Honor, they actually pled fraud, collusion, conspiracy to defraud. And although the Colorado case was dismissed on jurisdictional grounds, there were two years of merits discovery that went on during that period. And Judge Wiley Daniels, the late Judge Wiley Daniels recounted some of that discovery in his dismissal of the matter on jurisdictional grounds. I don't think that's the safeness of the record, but it's clearly something that the court can take judicial notice of in the docket of the Colorado action. When it came to New York, there's no allegation of fraud, of not paying fair market value to, of collusion, of not paying fair market value. They're just saying they got something that was worth more, they got something that they shouldn't have gotten. This was an arm's length business transaction. There's no allegations in the current complaint to support Your Honor's contention that might support an unjust enrichment claim. And I submit that's not there because in the discovery that was conducted in Colorado, it was shown that that's just not a basis for a claim. And you can't get unjust enrichment based on a contract, a claim that's in a contract when the contract has been terminated and my client paid fair value. There's no allegation in this complaint that they didn't pay fair value. He's just saying that his client's entitled to money because NER didn't pay him and somehow my client is a successor or somehow responsible. In the Colorado action, they allege successor liability. In this action, they do not. Late Judge Wiley Daniels addressed successor liability in determining jurisdiction issues in Colorado and found that there was no successor liability. Again, not relevant to this claim, but the court can go look at Judge Wiley Daniels, the late Judge Wiley Daniels' decision on the jurisdiction issue because there was substantial discovery done. So this is not a... Judge, on the issue of putting aside whether or not you would win if it was a voluntary discontinuance, on the issue that the district court held, which is that there was a termination, putting aside the Colorado action, I think Judge Radji asked you this earlier, but I just wanted to get clarification. They point to other sections of the agreement where the word termination, 11.2, says on the effective date of termination, due to a default or voluntary discontinuance by T.P. So there are certain phrases in the agreement that seem to use termination to reference not just a default or a breach, but also to voluntary discontinuance. No, I... I'm sorry. No, go ahead. Can you address that? Yeah, yes, because I think the district court addressed it directly and said that you can only get the acceleration on the termination. It's after termination. If you look at... No, but you're missing... The only reason we could say that the acceleration happened would be based on the Colorado action. In other words, they don't plead in this complaint that they accelerated. We haven't taken into account the Colorado action, but assuming we don't put the Colorado action admissions into the mix, wouldn't there be some ambiguity that would have to be resolved on that issue? Yes, and to that I say, Your Honor, if Mr. Poto... If this case was going on and there was a contract claim, and Mr. Poto didn't plead that there was a settlement and a release, a document that released the claim, and it wasn't in the complaint, would I be able to bring in the release and say, hey, wait a second, I've got a document here that shows that this claim is not plausible because there's a release. It's the same situation. You can't just leave something out on your fourth or fifth complaint, right? There's the first complaint. There's two amendments. Then we're dismissed. The court finds in Colorado the contract was terminated. He then files a new complaint in Colorado, changing the language, including my client, which has already been dismissed, which I didn't even understand. I didn't know about it. It was never served on us until we got a subsequent court order saying that action is dismissed, and then he files a new complaint in New York just disregarding the allegation of acceleration. It's a fact. Accelerated. That's what the whole claim in Colorado is about. I'm sorry. Can I ask this question? It seems to me the more plausible reading of 11.2 is that there's two ways to terminate. You terminate through default or you terminate through a voluntary discontinuation. Each one is an event of termination that then triggers a 42-month payment. It's unclear to me that acceleration is necessary to establish termination when there's been a voluntary discontinuation. The last sentence of the first paragraph of 11.2 seems to say that. There's no question that they can voluntarily discontinue services and collect money over time. My question is that an event of termination. Does the mere fact that he's discontinued the services constitute a termination? No, as between NER and ITP. But then once you accelerate, you've terminated. And if you're a buyer of this asset and you have to do your due diligence, which was done, and you look at this contract and then you look at the pleadings in the Colorado action and you cite the Colorado action in your contract, which is... I just want to come back to the language of 11.2. The last sentence of the first paragraph. ITP shall have no right of acceleration if the agreement is terminated due to ITP's default or ITP's voluntary discontinuation. Seems to me then that's suggesting termination one of two ways, default or discontinuation. On ITP's side. In other words, if ITP says, I'm not going to work anymore on this. I'm voluntarily discontinuing this. I'm not going to work. I can't accelerate, but I still get my money. But isn't it still a termination? That's my point. It seems to me there's an easier way to resolve this. Yes, it's a termination, but I could see an argument being made that's not termination that voids the whole rest of the agreement where there's an election of remedies. Here, my point on termination, I think the district court's point on termination was they terminated the entire agreement. They elected their remedy. They accelerated their damages for termination. There's no damages for voluntary discontinuance. The damages is for termination and default. What happened was NER wasn't paying ITP. NER defaulted. So, it wasn't just that ITP chose not to do any more work. They stopped working because they stopped getting paid. There was an NER default. And upon NER's default, they terminated the agreement and accelerated damages. And that's the second paragraph of 11.2, which says in the event of a default, and then there's notification of default four more times within a 12-month period, then ITP shall have the right to accelerate. So, is that what you're saying has happened here? That's exactly what happened. And if you even continue further, which I don't say is necessary in this instance, but if you look at late payments under 11.4, it even says in here that, I'm sorry, 11, it was 10 point, I have to go back, 10.5. Was NER notified of default four more times within a 12-month period? I don't know the answer to that. But maybe that's part of their defense on the acceleration and termination in Colorado, but that was not my concern. But I wanted to point out, if I may, I appear to be over, 10.5, which talks about notwithstanding any other provision of this agreement, in no event shall ITP's accelerated compensation under this section 10 constitute more than 40% of NER's proceeds from a sale. We never got to that in this case. But there's even a provision in there which says that if there is a sale and there's acceleration, which we have, 10.5, which is on appendix 22, the bottom, the last paragraph, ITP would only be entitled to 40% of the purchase price, which in this case was $150,000, not even jurisdictional limit of this court. And I know why these provisions are in here and what the background is. Again, it's not relevant to a motion to dismiss on the pleadings. Just to sum up, there was a termination, there was acceleration, and that is why the district court is correct in dismissing this complaint. Thank you. All right. Thank you. We'll now hear from Mr. Podol for three minutes. They're muted, Mr. Podol. Mr. Podol, turn off your mute. How's that? That's good. Okay. I'm sorry. The answer, I believe, to many of the inquiries going on here is that the word termination is used somewhat indiscriminately throughout Article 11 of this agreement. Termination, as Judge Sullivan has said, is used as the result of either voluntary discontinuation or default.  Even acceleration doesn't terminate the agreement. And you can see that in 11.2, because even though 11.2 says after termination, when we're talking about continuing payments, it then provides for 42 months of continuing payments after the so-called termination. And these are contract payments. These aren't damages. These are contract payments by NER to ITP. And we know they're contract payments and not damages because they're payable without fault and they're payable to ITP even if ITP had defaulted. So these are contract payments. And we have 42 contract payments. And we're talking about accelerating all after termination. Termination in this contract is used very indiscriminately. It doesn't mean, as Judge Bianco wondered at the beginning of the argument, does that mean the contract is dead and all rights are abrogated? Clearly not, because even in the sentence that the court picked out, that 11.2 says after termination, you can accelerate the continuing payments. Even that sentence doesn't say that there are no more rights after the so-called termination. It says that after the termination, you can still collect the continuing payments. You can still enforce your right to them. And you can accelerate them, even though here... Right, but the dispute here is over who you can enforce them against. And once there's termination, your obligation was to turn over the property rights to NER. And then it had to pay what the contract provides you. But it's the next step, getting to where facsimile has to pay, that I think is causing us the difficulty once there's termination. If contract rights continued, then the prescription against transfer continued, and the rights against the buyer continued. I'm sorry, I'm having difficulty following you. I understand that termination, for whatever reason, triggered payments, that there were payment obligations under the contract that persisted. But I'm not sure the contract as a whole persisted. Not true. You terminated it. Termination is used indiscriminately through this contract. Look, if ITP terminates only the development services, which was a possibility under the contract, and in fact what happened, the contract doesn't terminate. Even though it's used in 11.2 as the word termination, clearly the contract doesn't terminate. But if ITP has the right to 42 continuing payments... Right, that's a... I mean, I think you could just characterize that as a post-termination obligation to make periodic payments based on a formula. And so is a post-termination restriction against transfer. And if there's a restriction of... The transfer restriction is really in section 10. The transfer restriction is in section 7. It survives termination. But all this is before 11, which is what happens with termination. Yeah, the difficulty that we have in interpreting the contract, which should not be done in an agreement like this because it's ambiguous, is that we have to find, given the fact situation, which was not before the district court, we have to find how these sections are supposed to interplay with each other. And because termination is used so poorly and so indiscriminately throughout the agreement, it's become ambiguous and we really need the factual record to determine whether, you know, how this contract is supposed to work. And beyond that, what we will get to is that we will get to that acceleration does not require termination despite the indiscriminate use of termination in 11.2. And the reason for that is that even after termination as described in 11.2, ITP still has the right to collect and in some cases accelerate continuing payments, which could not happen if there was a termination and an abrogation of all rights in the contract. What we're getting to together here is the concept that this agreement is very ambiguous and we can't resolve this by saying,  because even if there were acceleration, that does not prove a termination if this contract is read carefully. And I understand it can be read so that it could, that just makes it ambiguous. So our plea here is, look, we are doing nothing more than trying to do as the contract suggested, which is obtain continuing payments from a buyer. And the buyer is trying obviously to get out of the continuing payments and let's get this to the district court so that the ambiguities can be resolved and we can see as a matter of justice whether the buyer should be paying continuing payments or not. That's our request. That's our case. Okay, thank you. We'll reserve decision. Have a good day. We'll now move on. Thank you for your kind attention. Thank you.